```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                          :
NEVELYN DUMAS, et. al.,                   :       CASE NO. 1:07-cv-3583
                                          :
           Plaintiff,                     :
                                          :
vs.                                       :       OPINION & ORDER
                                          :       [Resolving Doc. 27].
SBC GLOBAL SERVICES,                      :
                                          :
           Defendant.                     :
                                          :
-------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this opinion and order, the Court considers the Defendant's motion for summary judgment. [Doc. 27]. For the reasons stated below, the Court **DENIES** the motion.

**I. Background**

Plaintiffs Nevelyn Dumas, Wesley Jackson, and Juannell Stennis are African American employees of Defendant SBC Global. [Doc. 36, Ex. 7, 8, 9]. They work as Project Managers under the supervision of Area Manager Jerry Montag, who reports to Steve Holliger in a section called Worldwide Project Management. [Doc. 36, Ex. 7, 8, 9]. Worldwide Project Management works with external customers to provide telecommunications and data communications project management services. [Doc. 28, Ex 2 at 1]. Projects vary in scope, size, effort and responsibility. [Doc. 28, Ex 2 at 1]. Steve Holliger sets salaries for employees for Worldwide Project Management in the Midwestern region, and Jerry Montag supervises the daily activity for some Project Managers who work under Holliger. [Doc. 28, Ex 2 at 1]. Montag also conducts interviews and makes hiring

Case No. 1:07-cv-3583
Gwin, J.

recommendations for the open positions under his supervision. [Docs. 40-1 at 99-100, 39-2 at 18-19].

Montag and Holliger supervise four positions of workers. [Doc. 28, Ex 2 at 1]. A project coordinator provides administrative support to the project team and performs routine repetitive tasks, but must be ready to undertake a project manager's work. [Doc. 28, Ex 2 at 1; Ex. 3]. A project manager oversees a small project or phases of a larger project. [Doc. 28, Ex 2 at 1; Ex. 3]. A senior project manager oversees large projects that are complex in nature. [Doc. 28, Ex. 2 at 2]. On many projects, senior project managers oversee the work of project managers and project coordinators. [Doc. 28, Ex. 2 at 2]. Finally, there are senior program managers who oversee and manage a project throughout its duration. They are responsible for highly complex projects. [Doc. 28, Ex. 2 at 3].

The Plaintiffs principally complain that SBC has discriminated against them, especially with regard to their pay. The Defendant's compensation plan "uses Base Salary Pay Guidelines and Market Zones to communicate competitive base salary and total target cash compensation market data." [Doc. 28, Ex. 9 at 3]. SBC first defines the job, then using national surveys, it determines each job's market value. It places jobs with similar market values into one "market zone." [Doc. 28, Ex. 9 at 4]. "Base Salary Pay Guidelines are the expected base salary pay range for positions within a market zone." [Doc. 28, Ex. 9 at 4]. The Plaintiffs are in the market zone "MU." The salary range for this market zone in 2004 was $37,000-$82,000. [Doc. 28, Ex. 9 at 9]. The Defendant failed to put forth any information about the Target Salary Range or the Base Salary Pay Guidelines for the Project Manager position. [Doc. 28, Ex. 8].

The Defendant's employee movement guidelines are its only filing that explains factors it considers in setting the salary for new hires. The list includes: relevant experience, training, salary history, the position's Pay Guidelines, and proposed pay relative to peers in SBC. [Doc. 28, Ex. 9

Case No. 1:07-cv-3583
Gwin, J.

at 16]. Finally, the Defendant's employee movement guidelines establish that when an employee transfers to a position that is within the same management level as his or her current position, SBC will consider that transfer a lateral move and generally make no change in base salary. Nevertheless, SBC considers Pay Guidelines, peer salaries, the employee's current salary, and movement between cities to determine whether it should adjust the salary. [Doc. 28, Ex. 9 at 16].

Plaintiff Nevelyn Dumas is an African American who has worked for Defendant SBC Global for 12 years and transferred into Worldwide Project Management as a Project Manager in 2004. [Doc. 36, Ex. 8]. Her starting salary in 2004 was $51,070. [Doc. 28, Ex 4 at 45]. In 2007, she received an evaluation of "exceeds expectations", the second best evaluation she could receive of four categories. [Doc. 28, Ex. 4 at 50]. Her base salary in 2006 was $54,000 and in 2008, it was $54,000. [Doc. 28, Ex. 4 at 52; Doc. 26, Ex. 19 at 2].

Plaintiff Wesley Jackson is an African American who has worked for the Defendant for 15 years and joined Worldwide Project Management as a Project Manager in 2003. [Doc. 36, Ex. 9]. His starting salary was $52,437. [Doc. 28, Ex. 4 at 20]. In 2007, he received an evaluation of "meets expectations", the third best evaluation he could receive out of four categories. [Doc. 28, Ex. 4 at 25]. His base salary in 2006 was $56,700 and it was $61,250 in 2008. [Doc. 28, Ex. 4 at 33; Doc. 36, Ex. 19 at 1].

Plaintiff Juannell Stennis is an African American who has worked for the Defendant for 13 years and joined Worldwide Project Management as a Project Manager in 2005. [Doc. 36, Ex. 7]. In 2007, she received an evaluation of "meets expectations." [Doc. 28, Ex. 4 at 39]. She earned a base salary of $61,500 in 2006 and $65,750 in 2008. [Doc. 28, Ex. 4 at 41; Doc 36, Ex. 19 at 3].

The Plaintiffs say that comparable white employees are better paid. Area Manager Montag

Case No. 1:07-cv-3583
Gwin, J.

also manages: Kim Devore, a white project coordinator who made a base salary of $63,550 in 2007; Michael Landon, a white man who was a Project Manager in 2006 and made a base salary of $81,283 at that time; Jim Mitchell, a white man who was a Project Manager in 2006 and made a base salary of $79,170 at that time; and Don Davis, a white Project Manager who made a base salary of $68,700 in 2006. [Doc. 36, Ex. 19, 20]. Montag told both Landon and Mitchell about the open positions as Senior Project Manager in 2006 and encouraged them to apply. [Doc. 39, Ex. 2 at 225-26]. In contrast, Area Manager Montag did not tell the Plaintiffs about the positions. [Doc. 36, Ex. 7,8,9; Doc. 39, Ex. 2 at 225-26]. Montag asserted that he told Landon and Mitchell about the positions because he felt they were ready to take on the additional responsibility. [Doc. 39, Ex. 2 at 225-26].

Holliger, the Director of the Midwest Region of ATT's Worldwide Project Management Group indirectly supervises Project Managers who serve under Area Managers other than Montag. [Doc. 28, Ex. 2 at 1]. These include Tom Scales, an African American Project Manager who made a base salary of $80,790 in 2007; Ronni Towns, an African American Project Manager who made a base salary of $74,067 in 2007; Vinson Levi, a white Project Manager who made a base salary of $73,130 in 2007; Tony Black, an African American Project Manager who made a base salary of $68,200 in 2007; Bozidar Vrzorski, a white Project Manager who made a base salary of $68,200 in 2007; Torial Gilley, a white Project Manager who made a base salary of $64,375 in 2007; and Amy Campbell, a white Project Manager who made a base salary of $54,500 in 2007. [Doc. 28, Ex. 5 at 13].

The Plaintiffs bring claims under O.R.C § 4111.17, the Ohio Equal Pay Act, and O.R.C. § 4112, the Ohio employment discrimination statute, for discrimination in wages.

**II. Legal Standard**

Case No. 1:07-cv-3583
Gwin, J.

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Waters v. City of Morristown,* 242 F.3d 353, 358 (6th Cir. 2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The moving party, however, is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.* Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986). It is not sufficient for the nonmoving party merely to show that there is some "metaphysical doubt" as to the material facts. *Id.* at 586. Nor can the nonmoving party "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *Nat. Enters., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir. 1997). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which

Case No. 1:07-cv-3583
Gwin, J.

makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)); *see also Celotex,* 477 U.S. at 322. Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All-Lock Co.,* 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).

### III. Analysis

**A. Ohio Equal Pay Act**

Courts considering claims under the Ohio's Equal Pay Act apply the same analysis as claims brought pursuant to the federal Equal Pay Act. *Birch v. Cuyahoga County Probate Court,* 392 F.3d 151, 161 n.6 (6th Cir. 2004). The test is the same regardless of whether the discrimination is based on sex or race. *See Hollowell v. Society Bank & Trust,* 605 N.E.2d 954 (Ohio App. 1992). To establish a prima facie case under the Equal Pay Act, a Plaintiff must show that the employer paid different wages to an employee of another race for substantially equal work. *See Balmer v. HCA, Inc.,* 423 F.3d 606, 612 (6th Cir. 2005). Not all differences, however, will establish a violation of the Act. *Id.*

Once a plaintiff establishes a prima facie case of discrimination under the Equal Pay Act, the burden shifts to the defendant to show an affirmative defenses. *Id.* Those defenses are: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any factor other than [race]. *Id.* "The employer must prove that '[race] provides no part of the basis for the wage differential'" in order to prevail on summary judgment. *Id.* citing *Timmer v. Mich. Dep't of Commerce,* 104 F.3d 833, 844 (6th Cir.1997).

Case No. 1:07-cv-3583
Gwin, J.

1. Salaries

The Defendant contends that the Plaintiffs cannot establish a prima facie case of discrimination because they cannot show that the employer paid different wages to an employee of another race for substantially equal work. In response, the Plaintiffs argue that they can show that other, white employees received higher wages for substantially equal work. The Plaintiff alleges the comparators are Donald Davis, Michael Landon, John Pendergast, Jim Mitchell, Scott Miracle, and Kim Devore and says each of these white employees was paid more. The Defendant argues that these individuals do not perform substantially equal work and that the Court should consider all the project managers who report to Holliger as proper comparators, rather than all the individuals who report to Montag.

The Equal Pay Act only applies to individuals working within the same establishment. 29 U.S.C. §206(d)(1). Typically, establishment "refers to a distinct physical place of business rather than to an entire business or 'enterprise' which may include several separate places of business." 29 C.F.R. § 1620.9. Yet, "unusual circumstances may call for two or more distinct physical portions of a business enterprise being treated as a single establishment." Id. The Plaintiffs work at different physical locations: Plaintiff Dumas works in Cleveland, and Plaintiffs Jackson and Stennis work in Columbus. [Doc. 28, Ex. 5 at 20, 42; Doc. 36, Ex. 14]. They have argued that they work for the same Area Manager. The Area Manager conducts interviews and makes hiring recommendations for open positions under his supervision. While the recommendations pass through Holliger for upper management approval, Holliger rarely participates in Montag's decision-making process and has never vetoed or changed Montag's recommendations. [Docs. 40, Ex. 1 at 99-100, 39, Ex 2. at 18-19]. Area Manager Montag also assigns work and provides input and evaluations that Holliger takes into account when making compensation decisions. These facts weigh in favor of finding that the

-7-

Case No. 1:07-cv-3583
Gwin, J.

Plaintiffs work at one single establishment. *See* 29 C.F.R. § 1620.9; *see also Meeks v. Computer Associates International*, 15 F.3d 1013, 1017 (11th Cir. 1994) (finding that a single office of Computer Associates was one establishment where hiring decisions were made at the local level despite centrally set salary ranges). The Court finds that it need not determine this as the Plaintiffs have provided evidence of white comparators who make more than they do at each of their locations.

Director Holliger oversees the Midwest region and makes all compensation decisions for the Midwest. Area Manager Montag supervises the Plaintiffs in their daily work and is subordinate to Holliger. The Plaintiffs argue their comparators are appropriate. They state all of these individuals work under Montag's supervision and all of them do substantially equal work. A shared manager is relevant in determining whether comparators are appropriate. *See Vehar v. Cole Nat'l Group, Inc.*, 251 Fed. Appx. 993, 999 (6th Cir. 2007). The Court, therefore, will consider whether the Plaintiffs' proffered comparators do substantially equal work.

"'Equal work' does not require that the jobs be identical, but only that there exist 'substantial equality of skill, effort, responsibility and working conditions.'" *Buntin v. Breathitt Cty. Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998) (citation omitted). "Whether the work of two employees is substantially equal 'must be resolved by an overall comparison of the work, not its individual segments.'" *Id.* (citation omitted). The Court notes that "application of the equal pay standard is not dependent on job classifications or titles but depends rather on actual job requirements and performance." 29 C.F.R. § 1620.13(e). Thus, "job content" is "controlling." *Id.*

The Plaintiffs acknowledge that Kim Devore, one of the Plaintiffs' asserted comparators, has duties somewhat different from the Plaintiffs. [Doc. 28, Ex. 5 at 184]. Nonetheless, they argue her work should be considered substantially equal. Devore principally works as an assistant. Her job

-8-

Case No. 1:07-cv-3583
Gwin, J.

description, however, states that, when necessary, she must undertake the work of a project manager. [Doc. 36, Ex. 4]. Her regular duties, however, involve much more administrative activities than the Plaintiffs do. [Doc. 28, Ex. at 124-25]. She only takes on project manager responsibilities to fill gaps, such as if a project manager is on sick leave. [Doc. 36, Ex. 4]. Therefore, her job content is not substantially similar to the Plaintiffs' job content.

The Defendant argues that Miracle and Pendergast left SBC Global more than a year before the Plaintiffs filed this suit. O.R.C. §4111.17 states that "[a]ny action arising under this section shall be initiated within one year after the date of violation." Thus, the Defendant argues that their claims with respect to Miracle and Pendergast are time barred. The Court agrees that, to establish a prima facie case, the Plaintiffs cannot rely on the pay differentials that occurred more than a year ago.[1]

The Defendant argues that Landon and Mitchell are inappropriate comparators because they currently hold the position of Senior Project Manager. The Plaintiffs acknowledge that this is a different position with more responsibilities than Project Manager. The Plaintiffs assert, however, that Landon and Mitchell were recently promoted and that they seek to compare Landon and Mitchell's wages to their own when Landon and Mitchell held the position of Project Manager. Between 2003 and 2006, Landon and Mitchell held the same position as the Plaintiffs and during the statute of limitations period. [Doc. 28, Ex. 2 at 5]. Thus, Landon and Mitchell are appropriate comparators, with regard the salary they and Plaintiffs earned in 2006. Moreover, Area Manager Montag, who assigns projects among the Project Managers on his team, testified that he believed that people who work for his employment group do the same work, and that he makes no comparisons

---

[1] This would not be true with respect to damages, however. *See Featzka v. Millcraft Paper Co.*, 62 Ohio St. 2d 245, 249 (1980).

-9-

Case No. 1:07-cv-3583
Gwin, J.

between the work he assigns. [Doc. 39, Ex. 2 at 197, Ex. 3 at 205, 222, 224-225, 236, 277-278]. Mitchell works in Columbus, the same location as Plaintiffs Stennis and Jackson. [Doc. 28, Ex. 3 at 30].

The Defendant argues that Davis is an inappropriate comparator because he has worked independently on projects. Again, the Court need only find that the comparators perform substantially equal work, job content is controlling. 29 C.F.R. § 1620.13 That these individuals have worked on projects alone, when they are doing essentially the same content of work, does not persuade the Court to find they are appropriate comparators. Importantly, the Plaintiffs' and their Area Manager Montag testified that everyone in his employment group did substantially the same work over time. *See Beck-Wilson v. Principi*, 441 F.3d 353, 361 (6th Cir. 2006) (finding when individuals holding different job titles are employed to do projects interchangeably, those individuals do substantially equal work). Construing these facts in the light most favorable to the Plaintiffs, Davis is an appropriate comparator. Davis works in Cleveland, the same location as Plaintiff Dumas. [Doc. 28, Ex. 4 at 57].

Having found that Davis does substantially equal work, and that Landon and Mitchell did substantially equal work for a month within the statute of limitations period, the Court next considers whether any of the Defendant's proffered comparators should be considered as well. The Defendant argues that Thomas Scales, Ronni Towns, Vinson Levi, Donald Davis, Tony Black, Bozidar Vrzorski, Torial Gilley, and Amy Campbell are also appropriate comparators because they hold the same job title as the Plaintiffs and all of them report to Director Holliger, who makes the compensation decisions. *See EEOC v. White & Son Enters.*, 881 F.2d 1006, 1009 (11th Cir. 1989)("If . . . other appropriate 'comparators,' i.e., employees doing substantially equal work, were

Case No. 1:07-cv-3583
Gwin, J.

wrongly excluded from the comparison by plaintiff, defendant must call them to the attention of the court.") The Court notes that these proposed comparators do not work for the same Area Manager nor do they work in the same location.

The Defendant argues that since Director Holliger makes all the final compensation decisions, all comparators reporting to him are appropriate. The Area Managers, however, conduct interviews, make hiring recommendations, evaluate performance and makes job assignments. The people directly reporting to Area Manager Montag have limited direct contact with Holliger and rarely work under the supervision of other Area Managers. Holliger makes salary decisions after conferring closely with the Area Manager. For these reasons, it is unclear that all the people reporting ultimately to Director Holliger are part of a single establishment. 29 C.F.R. §1620.9. "The hallmarks of [the] standard [to determine establishment] are centralized control of job descriptions, salary administration, and job assignments or functions." *Mulhall v. Advance Security*, 19 F.3d 586, 591 (11th Cir. 1994). With different Area Managers supervising the different comparators, it would seem difficult for the Defendant to demonstrate that this situation meets the "unusual circumstances" and be considered the same establishment. See *Gerlach v. Michigan Bell Tel. Co.,* 448 F.Supp. 1168 (E.D.Mich. 1978)(finding that individual offices of the Michigan Bell Telephone Company were individual establishments where employees were not often transferred between offices and a substantial portion of their supervision was in the local office).[2/]  Since the Defendant's comparators do not report to

---

[2/] Nevertheless, the Court finds that even if it found that all individuals reporting to Holliger worked at the same establishment, the Plaintiffs could still meet their burden based on the 2006 base salaries. This case began at the end of 2007, thus, the Court will consider the base salary for 2006. The 2006 salaries are within the statute of limitations period, and can be compared with Landon and Mitchell's salaries as Project Managers. The Defendant does not put forth the base salary for their asserted comparators for 2006. In 2006, the average white comparator made a base salary of
(continued...)

Case No. 1:07-cv-3583
Gwin, J.

Director Holliger through Area Manager Montag, the Court does not find these individuals are appropriate comparators.

The Defendant asserts the Court should use averages to compare the salaries of the white employees with those of the African American employees. While the Ninth Circuit has used averages, *see, e.g.,* Hein v. Oregon Coll. of Educ., 718 F.2d 910, 916 (9th Cir. 1983), averages can be very misleading. *See, e.g., Daft v. Advest, Inc.*, 2008 U.S. Dist. LEXIS 7384 (N.D. Ohio Jan. 18, 2008)(discussing how averages can be misleading and mask divergences in salaries). Nevertheless, the Sixth Circuit has used this factor as well. Ambrose v. Summit Polymers, Inc., 172 Fed. Appx. 103, 107 (6th Cir. 2006). The Court finds that even using this flawed metric, the Plaintiffs can establish a prima facie case.

As discussed above, the Court has some question as to whether the comparators work at the same establishment. Typically, same establishment means same location. Using this definition, Plaintiff Dumas can establish a prima facie case by pointing to Davis, who made a base salary of $70,070 in 2007 and $68,700 in 2006–more than $10,000 dollars more than she made each year. [Doc. 36, Ex. 20]. Plaintiffs Stennis and Jackson can establish a prima facie case by showing that Mitchell made $81,283 in 2006 when he was a Project Manager and Stennis and Jackson made $56,700 and $61,500 respectively. [Doc. 36, Ex. 20].

If the Court were to find that all individuals working for Montag work at the same

---

[2/](...continued)
$76,384.33. In 2006, the Plaintiffs' average base salary was $57,400. In 2007, the average base salary for African American Project Manager $67,100.33, and for a white Project Manager it was $66,055.00. These numbers establish a prima facie case under the Ohio Equal Pay Act for the difference in base salaries in 2006, at least some of which was during the statute of limitations period.

-12-

Case No. 1:07-cv-3583
Gwin, J.

establishment, the Plaintiffs could also establish a prima facie case. The average salary of African Americans working for Montag in 2006 was $57,400 and for white employees it was $76,384.33. In 2007, African Americans made an average of $59,468.33, and Davis, the only relevant comparator for that year, made $70,070. [Doc. 36, Ex. 20]. Thus, the Plaintiffs can establish a prima facie case whether they are all working at the same establishment or not.

After the Plaintiff has established a prima facie case, the burden shifts to the Defendant to establish an affirmative defense. The Defendant argues that its system of determining starting salaries is based on a factor other than race. The Defendant's burden of establishing these defenses "is a heavy one." *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 826-27 (2000). The Equal Pay Act's catch-all provision "does not include literally any other factor, but a factor that, at a minimum, was adopted for a legitimate business reason." *EEOC v. J.C. Penney Co., Inc.*, 843 F.2d 249, 253 (6th Cir. 1988).

The Defendant's Employee Movement Guidelines state that in setting the salary for new hires, it will consider relevant experience, training, salary history, the position's Pay Guidelines, and proposed pay relative to future peers in SBC. [Doc. 28, Ex. 9 at 16]. If an employee transfers to a position that is within the same management level as his or her current position, SBC will consider that transfer a lateral move and generally make no change in base salary. SBC will consider the Pay Guidelines, peer salaries, the employee's current salary, and movement in between cities to determine whether it should adjust the salary. [Doc. 28, Ex. 9 at 16]. The Defendant has not set forth how the Pay Guidelines work for the Project Manager position or any of the Plaintiff's starting positions. The Court cannot determine how SBC set the Plaintiff's original salaries.

The Defendant asserts that this salary determination policy is a neutral policy for setting

-13-

Case No. 1:07-cv-3583
Gwin, J.

salaries that establishes a factor other than race. *See, e.g.,* Ambrose, 172 Fed. Appx. at 107 (finding the use of market conditions and experience established a neutral policy). The Defendant has a heavy burden to prove that its policies are based on a factor other than race. Kovacevich, 224 F.3d at 826-27.

In explaining the pay differentials, the Defendant mostly says the comparators came to the Project Manager positions from higher paying positions. The Defendant explains that it normally does not adjust a transferring employee's salary downward. Therefore, the Defendant argues, their prior salaries–either as managers or in positions outside the company–were higher than the Plaintiffs' prior salaries. But, as discussed, this cannot alone account for the difference.

Courts have rejected, however, the idea that prior salary alone can establish a justification for a pay disparity. "Consideration of a new employee's prior salary is allowed as long as the employer does not rely solely on prior salary to justify a pay disparity." Balmer, 423 F.3d at 612 citing Irby v. Bittick, 44 F.3d 949, 955 (11th Cir. 1995) ("If prior salary alone were a justification, the exception would swallow up the rule and inequality in pay among [races] would be perpetuated.").

SBC does not allege that Landon or Davis possessed more relevant experience or better training, nor does it assert how it factored in peer salaries in making its base salary calculation for these individuals. SBC offers that Mitchell did have certain relevant experience, specifically experience and contacts with the State of Ohio, a key client. But, given the lack of evidence explaining the differential for the other white employees, this does not establish the defense.

To prevail on summary judgment, the Defendant must prove that race played no part in the salary differential. Kovacevich, 224 F.3d at 827. The Defendant has asserted they have a policy that relies on other factors, but they only identified prior salary as a factor for this Court to consider. This

-14-

Case No. 1:07-cv-3583
Gwin, J.

alone cannot establish the defense. *Balmer*, 423 F.3d at 612. The Defendant has not even put forth evidence to establish how it sets starting salaries within an individual market zone. As such, the Court finds the Defendant has not carried its burden to establish an affirmative defense.

The Defendant finally argues that its base salaries follow a merit-based pay system. It states this pay system is based on two factors: starting salary and annual increases. It states that annual increases are based on merit. As the Court has found that the Defendant has failed to carry its burden to establish it sets starting salaries on a factor other than race, the Court need not consider this argument that its annual increases in salary are based on a merit system. The Defendant must prove that race played *no part* of the basis for the wage differential. *Balmer*, 423 F.3d at 612 (emphasis added). As the Court determined the Defendant cannot prove this in regards to starting salary, summary judgment for the Defendant on the issue of the differential in salaries is inappropriate.

2. Annual Salary Increases

The Plaintiffs also claim that the salary increases are discriminatory. The Plaintiffs cannot establish a prima facie case that annual salary increases violated the Equal Pay Act. In 2007, the Plaintiffs received a higher average increase than their asserted white comparators. Even using the comparators that the Plaintiffs argue are appropriate, the average increase for a black employee was $2068.33 and for a white employee it was $1920.67. Of course, a reasonable jury may find that the base salaries remained discriminatory over time, regardless of the Court's finding that the annual increases are not discriminatory by themselves.

3. Bonuses

The Court finds that the Plaintiffs have failed to establish a prima facie case on bonuses. The Plaintiffs seem to argue that the Key Contributor Award bonus has been distributed in a

Case No. 1:07-cv-3583
Gwin, J.

discriminatory manner. The only bonus award within the statute of limitations, however, was in 2007. The two individuals who received this bonus were African American. Therefore, the Plaintiffs cannot establish a prima facie case. *Balmer*, 423 F.3d at 612.

**B. Race Discrimination**

The Defendant also argues that the Plaintiffs cannot establish their claim under O.R.C. § 4112. Federal case law interpreting Title VII claims applies to cases involving alleged violations of O.R.C. § 4112. *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm.*, 66 Ohio St. 2d 192, 421 N.E.2d 128, 131 (Ohio 1981); *see also Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 471-72 (6th Cir. 2005).

The Sixth Circuit has held that "[w]hen a plaintiff successfully defeats a defendant's motion for summary judgment pertaining to her EPA claim by raising a genuine issue of material fact as to defendant's affirmative defenses, she also defeats the defendant's motion for summary judgment concerning a parallel Title VII claim." *Vehar v. Cole Nat'l Group, Inc.*, 251 Fed. Appx. 993, 1002 (6th Cir. 2007).

With regard the EPA claim, the Court has found that the Defendant failed to carry its burden that the wage disparity was based on a factor other than race. In the EPA context, the Defendant bears a heavy burden. By contrast, in the Title VII context, once the Plaintiff establishes a prima face case, the burden of production only shifts to the Defendant to provide a legitimate, nondiscriminatory reason. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-56 (1981) The ultimate burden of proof always remains with the Plaintiffs, who must demonstrate that asserted reason is pretextual. *Id.* at 253.

The Court has found that the Plaintiffs have established a prima facie case under the Equal

-16-

Case No. 1:07-cv-3583
Gwin, J.

Pay Act. The same is true under Title VII. The Court finds that the individuals who report to Area Manager Montag are the appropriate comparators. Area Manager Montag evaluates performance and confers with Director Holliger when he makes compensation decisions. Therefore, the workers who report to Holliger through Montag are similarly situated in all relevant respects. *See, e.g.*, Mitchell v. Toledo Hospital, 964 F.2d 577, 586 (6th Cir. 1992). Other Project Managers who report to Holliger through a different Area Manager are not similarly situated. As such, the Court finds the Plaintiffs have established a prima facie case under Title VII.

The Court has found that the Defendant did not satisfy its burden under the Equal Pay Act to show that race played no part in the difference in salaries among its employees. Under Title VII, however, the Defendant only must proffer a legitimate, nondiscriminatory reason. This burden is merely one of production, not persuasion and involves no credibility assessment. Reeves v. Sanderson Plumbing Prods, Inc., 530 U.S. 133, 142 (2000); *see also* Bd. of Trustees v. Sweeney, 439 U.S. 24, 25 n.2 (1978) (noting that "the employer's burden is satisfied if he simply 'explains what he has done' or 'produces evidence of legitimate nondiscriminatory reasons'").

The Defendant says that it set base salaries based on the individual employee's prior salary. As for some of their white comparators who did not transfer from another department within SBC, the Defendant still cited prior salary as the determining factor.

After the Defendant sets forth its reason, the burden shifts back to the Plaintiffs to demonstrate pretext. Burdine, 450 U.S. at 253. The Plaintiffs may do this by showing the reason (1) has no basis in fact; (2) did not actually motivate the challenged conduct; or (3) is insufficient to explain the challenged conduct. Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir. 1994).

-17-

Case No. 1:07-cv-3583
Gwin, J.

The Plaintiffs point to the Defendant's policies that state that it would consider peer salaries when deciding whether it would deviate from its usual practice of keeping a transferring employee's salary at the same level. [Doc. 28, Ex. 9 at 16]. While the Defendant has this safety-valve policy to equalize disparities, Director Holliger never ever used it in relation to any of his employees. In fact, Holliger seems to have followed the prior salary for each incoming transferring employee, and he cites each new employee's prior salary as a basis for setting their salary. [Doc. 28, Ex. 2]. Thus, despite having authority to adjust salaries to reduce disparities caused by over-reliance upon past salaries, Hollinger ignored this authority. Given this authority to make the salary for equivalent position comparable, Defendants explanation that salary disparities result solely from starting pay differences is insufficient to explain the challenged conduct.

The Plaintiffs also state that each Plaintiff complained to Montag about the inequities, but that he did nothing. [Doc. 36, Ex. 7, 8, 9]. Montag had the duty to confer with Holliger about the salaries of the employees under his supervision. While Holliger had ultimate responsibility for setting the salaries, Montag was influential in the process.

The Plaintiffs also note that their supervisor Montag only told two white employees and not them about a Senior Project Manager position that opened up. [Doc. 36, Ex. 7, 8, 9]. Montag's failure to advise the Plaintiffs about an opening gives some evidence that the Defendant's justification for the salary differentials was pretextual. Montag, as the Plaintiffs' supervisor, plays a key role in setting the Plaintiffs' salaries. His actions are therefore relevant in considering whether their salaries are discriminatory.

-18-

Case No. 1:07-cv-3583
Gwin, J.

## IV. Conclusion

For the reasons stated above, the Court **DENIES** the Defendant's motion for summary judgment.

IT IS SO ORDERED.


Dated: June 18, 2008               *s/     James S. Gwin*
                                   JAMES S. GWIN
                                   UNITED STATES DISTRICT JUDGE